The WASHINGTON POST
COMPANY, Plaintiff,

v.

UNITED STATES DEPARTMENT
OF AGRICULTURE, et al.,
Defendants.

Civil Action No. 95–0656.

United States District Court,
District of Columbia.

Oct. 18, 1996.

Patrick J. Carome, Wilmer, Cutler & Pickering, Mary Ann Werner, Washington Post, Washington, DC, for plaintiff.

Claire M. Whitaker, Assistant United States Attorney, Washington, DC, for defendants.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

The Washington Post Company brings this action under the Freedom of Information Act, 5 U.S.C. § 552, to compel the United States Department of Agriculture ("USDA") to release the names and addresses of, and amounts paid to, individuals and business entities that received payments in fiscal year 1993 under the USDA cotton price support program. *See* 7 U.S.C. §§ 1444 *et seq.* USDA has invoked Exemption 6 of the Freedom of Information Act, 5 U.S.C. § 552(b)(6), which permits the government to withhold from release "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[1]

## I. FACTUAL BACKGROUND

In 1993, USDA distributed approximately one billion dollars in cotton subsidies to nearly 100,000 recipients. Declaration of Bruce R. Weber ("Weber Decl.") ¶ 4 (Oct. 18, 1995), Def.'s Mot., Attachment A.[2] The cotton price support program provides deficiency payments to producers if a certain market price is not obtained during the marketing year. Weber Decl. ¶ 2. The cotton price support program is part of a larger $11.7 billion system of agricultural and food subsidies, a system that includes price support and production adjustment programs as well as the food stamp program. Pl.'s Mot. at 2.

On October 7, 1993, Sharon LaFraniere, a staff writer for The Post, requested the names and addresses of, and amounts received by, all cotton program recipients for fiscal year 1993 in connection with an article she was writing about allegations of fraud and conflicts of interest in the administration of the cotton price support program. USDA declined to release the information and subsequently denied The Post's administrative appeal, invoking Exemption 6 of the FOIA. Weber Decl. ¶¶ 5–8. The Post filed a complaint in this Court and the case is now before the Court on the parties' cross-motions for summary judgment.

## II. FOIA EXEMPTION 6

 The fundamental purpose of the Freedom of Information Act is to assist citizens in finding out "what their government is up to." *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989). The FOIA mandates full public disclosure of agency records unless the requested records "fall squarely" within one or more of the nine statutory exemptions. *Burka v. United States Department of Health and Human Services,* 87 F.3d 508, 515 (D.C.Cir.1996); *see Oglesby v. United States Department of the Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996). Against the FOIA's strong presumption in favor of full disclosure, the government bears the burden of establishing that one or more of the FOIA exemptions applies when it seeks to withhold requested information. *Department of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 546–47, 116 L.Ed.2d 526 (1991).

 Exemption 6 protects from release only those "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 requires "the Court to 'balance the individual's right of privacy' against the basic policy of opening 'agency action to the light of public scrutiny.'" *Department of State v. Ray,* 502 U.S. at 175, 112 S.Ct. at 548

---

1. The parties agree that the information sought is a "similar file" to the sort protected by Exemption 6 and that the Exemption 6 inquiry therefore is appropriate. *See Washington Post Co. v. U.S. Department of Health and Human Services,* 690 F.2d 252, 260 (D.C.Cir.1982) ("[A]ll information which 'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained.").

The parties *also* agree that while the information sought might otherwise be protected by the Privacy Act, it must be released under the FOIA unless some specific FOIA exemption applies. *See* 5 U.S.C. § 552a(b)(2).

2. Recipients can be natural persons, corporations, partnerships, estates, trusts, churches, charitable organizations or governmental entities. *See* 7 C.F.R. §§ 1497.101–1497.107. In 1993, approximately 17,897 of the 98,868 recipients were not natural persons. Supplemental Declaration of Bruce R. Weber ("Supp. Weber Decl.") ¶ 5 (Dec. 15, 1995), Attachment, Defs.' Response to Pl.'s Rule 56(f) Motion.

(quotations omitted). The Supreme Court has rejected the position that "disclosure of a list of names and other identifying information is inherently and always a significant threat to the privacy of the individuals on the list. Instead, . . . whether disclosure of a list of names is a 'significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue.'" *Id.* at 176 n. 12, 112 S.Ct. at 548 n. 12 (quoting *National Association of Retired Federal Employees ("NARFE") v. Horner,* 879 F.2d 873, 877 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990)). The information need not be embarrassing or of an intimate nature; it will be protected so long as it invites "clearly unwarranted" intrusions. *NARFE v. Horner,* 879 F.2d at 875.

■ As with any request under the FOIA, under Exemption 6 the identity of the requesting party is irrelevant. Records, if not exempt, must be made "promptly available to *any* person." 5 U.S.C. § 552(a)(3) (emphasis added). *See United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. at 771, 109 S.Ct. at 1480–81; *Swan v. SEC,* 96 F.3d 498, 499–500 (D.C.Cir.1996); *NARFE v. Horner,* 879 F.2d at 875. "Once records are released, nothing in FOIA prevents the requester from disclosing the information to anyone else." *Swan v. SEC,* 96 F.3d at 500. Thus, the issue is not simply what the requester might do with the information but also "what anyone else might do with it." *Id.* The Court therefore must consider the universe of possible consequences that the release of the information might trigger in assessing the nature of the list and the characteristics that would be revealed by its release. *See Department of State v. Ray,* 502 U.S. at 175–77, 112 S.Ct. at 547–49; *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. at 771–72, 109 S.Ct. at 1480–81.

### A. The Privacy Interests of Cotton Program Recipients

■ The USDA asserts that the privacy interests of cotton program recipients would be invaded if their names, addresses and the amount of subsidy they received were disclosed because they could be subject to unwanted commercial solicitations and possibly unwarranted media attention. Def.'s Mot. at 9–10, 13. Defendant relies heavily on *NARFE v. Horner,* where the D.C. Circuit declined to release the names and home addresses of retired or disabled federal employees to the National Association of Retired Federal Employees because the court feared that the retirees, who received monthly annuity payments from the government, would be subjected "to an unwanted barrage of mailings and personal solicitations" and that such a barrage would be contrary to the "ancient concept that a man's [sic] home is his castle." *NARFE v. Horner,* 879 F.2d at 876.

The nature of the list sought by plaintiff in this case does not create the same sort of personal privacy concerns or invite the kind of unwarranted intrusions that would justify nondisclosure. The only individualized information that would be ascertainable from the release of the list is that a particular individual grows cotton, the address of the farm where the cotton is grown and where the subsidy is received, and how much of a subsidy that cotton farmer received in 1993. It might also be deduced from the amount of the subsidy how much cotton the producer grew in 1993. The Court is unable to discern, nor have defendants persuasively explained, how any of this relatively generic information about thousands of similarly situated businesspeople could lead to clearly unwarranted invasions of their personal privacy. Indeed, it is precisely because the list is so large and the information so generic that the individual privacy interests are so small. *See Kurzon v. Department of Health and Human Services,* 649 F.2d 65, 69 (1st Cir. 1981) ("[T]he loss of privacy involved in disclosing the identities of *all* applicants is minimal; it is only the fact [that an applicant was rejected] that raises the possibility of an invasion of privacy.") (emphasis in original).[3]

---

**3.** None of the information at issue in this case is stigmatizing, embarrassing or dangerous; it does

not expose these cotton farmers to creditors; and it reveals nothing about the success or failure of

■ More specifically, and in contrast with the situation presented in *NARFE,* the government's theory that cotton subsidy recipients would be overwhelmed by mailings or solicitations is implausible. Everyone on the USDA list is engaged in the business of cotton growing, and cotton farmers can be expected to handle solicitations from farm machine manufacturers, fertilizer and seed companies, and whatever other commercial venture might seek to use the list, with equanimity. While in theory *any* person or entity could use the list, the Court is not obliged to consider the effect of *any* hypothetical mailing no matter how farfetched. Rather, the Court must assess the effects of those mailings that are likely to occur as a result of the nature of the list and the characteristics it reveals, which are, in this case, mailings aimed at cotton growers. *See NARFE v. Horner,* 879 F.2d at 875–76. To state the point more generally, Exemption 6 is designed to protect against unwarranted invasions of *personal* privacy and not typically to protect businesspeople from commercial mailings directed at their business needs.

In a case very similar to the one at bar, Judge Gesell ordered the release of a list of names of individual mushroom producers. *Ackerson & Bishop Chartered v. United States Department of Agriculture,* Civil Action No. 92–1068, Memorandum (D.D.C. July 15, 1992). He reasoned that "[t]hese individuals are businessmen [sic], some of whom produce or import over 500,000 pounds of mushrooms a year. Disclosure of the named persons engaged in such business has no personal effect and obviously conduct of a business in personal name has already caused disclosure of the name. There is, in short, no expectation of privacy." *Id.* at 1.

■ The government argues, however, that this case presents a unique situation

because farmers so often live where they work and that, as a result, many of the addresses on the list are home addresses. *See* Weber Decl. ¶ 8 ("[I]n cases where an individual and the nonindividual business entity are in effect identical, such as closely held corporations or partnerships with a small number of partners, a protectible privacy interest under exemption 6 does exist."). The Court agrees that personal privacy concerns necessarily are greater for an individual's home address than for his or her business address. *See NARFE v. Horner,* 879 F.2d at 875 ("[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and [home] address is significant.").[4] That interest alone, however, is not enough to satisfy the requirements of Exemption 6; if it were, no list of names and home addresses would ever be released under the FOIA and, of course, that is not the state of the law. *See Department of State v. Ray,* 502 U.S. at 175–76 & n. 12, 112 S.Ct. at 547–48 & n. 12; *Aronson v. U.S. Department of Housing and Urban Development,* 822 F.2d 182, 186 (1st Cir.1987) ("We have not hesitated in the past to allow disclosure of names and addresses when there has been a strong public interest in favor of disclosure and when a significant privacy interest other than the release of addresses was lacking.").

The "defining characteristic" of the list sought by The Post is that it contains business addresses. *NARFE v. Horner,* 879 F.2d at 876. The individuals on this particular list are there because they are cotton farmers and businesspeople who have sought and received government subsidies in their business capacities. While their business addresses might in many instances be the same as their home addresses, the farmers whose names and addresses are on the list did not

---

the farm or the wealth or poverty of the recipient. By contrast, Judge Penn withheld the names of individuals who had defaulted on their student loans because of the highly sensitive nature of that very piece of information, namely, the fact that the person defaulted. *Gannett Satellite Information Network, Inc. v. United States Department of Education,* 1990 WL 251480, Civil Action No. 90–1392 (D.D.C. Dec. 21, 1990). *See also Department of State v. Ray,* 502 U.S. at 176, 112 S.Ct. at 548 (denying release of records

under the FOIA because information sought would identify persons who cooperated with State Department investigation of Haitian government's human rights record and its release could subject them to mistreatment).

4. The address of a business itself receives no protection at all under Exemption 6 because a business entity has no "personal privacy" interest. *See infra* note 6.

get subsidies because they live on a farm but because they work on one. The nature of the list reflects the professional relationship of the recipients to the government as cotton farmers and, as such, its release must be measured in light of the effect on the recipients as businesspeople. In sum, the Court concludes that the release of this list of relatively generic facts—names, business addresses and amounts of subsidy—that reveal no damaging or sensitive information and that pertain to tens of thousands of otherwise indistinguishable businesspeople would not constitute an unwarranted invasion of their personal privacy.

 Finally, with respect to possible unwanted media attention, the privacy test turns on the nature of the information sought and not on the identity of the seeker. It therefore is the release of the information itself—the fact that a particular farmer received a cotton subsidy—that must create the unwarranted invasion of personal privacy and not the fact that it is The Washington Post that happens to be asking for it. Moreover, as Judge Joyce Hens Green has noted, "inquiry by news media or other interested parties about any particular [individual] is not the sort of invasion of privacy envisioned by Exemption 6." *National Association of Atomic Veterans v. Director, Defense Nuclear Agency,* 583 F.Supp. 1483, 1487 (D.D.C. 1984). Accordingly, the mere threat of media attention does not suffice to draw the protective cloak of Exemption 6 over information that happens to be newsworthy.

### B. The Public Interest in Disclosure

 As the Supreme Court has established, "unless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail.... FOIA's basic policy ... focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory

purpose." *Department of State v. Ray,* 502 U.S. at 177–78, 112 S.Ct. at 549 (citations and quotations omitted). The government argues nevertheless that the release of data pertaining to the cotton program recipients would not shed any light on the workings of the agency and that there therefore is no public interest in disclosure. *See United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. at 773, 109 S.Ct. at 1481–82 ("[D]isclosure of information about private citizens that ... reveals little or nothing about an agency's own conduct" does not further the public interest). The Court disagrees.

There is far more at stake in this action than a requester's private interest in obtaining the records. *Cf. NARFE v. Horner,* 879 F.2d at 879. A significant public interest lies in shedding light on the workings of the Department of Agriculture and the administration of this massive subsidy program, and plaintiff has persuasively demonstrated how the release of the recipients' names, addresses and subsidy amounts could illuminate the USDA's actions. The Post has identified allegations of fraud and conflict of interest, supported by government reports and investigations, as well newspaper articles and other information in the public domain, sufficient to raise nonspeculative questions about the workings of the USDA.[5] Under the FOIA's presumption in favor of disclosure and its core purpose of informing the public about the workings of government, no more is required. *See The Nation Magazine, Washington Bureau v. United States Customs Service,* 71 F.3d 885, 894–95 (D.C.Cir. 1995) ("[T]he mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption. Such records may still be cloaked with the public interest if the information would shed light on agency action.").

Having found that the privacy interest at stake in the release of the requested informa-

---

5. *See, e.g.,* Fox in the Henhouse: Cash, Crime & Conflict of Interest in Federal Farm Subsidy Programs (Environmental Working Group, Washington D.C. June 1995), Pl.'s Ex. 3; Office of Inspector General Semiannual Report to Congress (FY 1992–First Half) at 13–14, Pl.'s Ex. 5; Office of Inspector General Semiannual Report to Congress (FY 1992–Second Half) at 17, Pl.'s Ex. 6; Indictment, *United States v. Five M Farming Enterprises, et al.,* Crim. No. 96–0175, Indictment at 5 (D.D.C., Jackson, J.).

tion is minimal while the public interest in its release is substantial, the Court concludes that The Post is entitled to release of the list. A Order consistent with this Opinion will be entered this same day.[6]

SO ORDERED.

### ORDER

This case is before the Court on the parties' cross-motions for summary judgment. For the reasons stated in the accompanying Opinion issued this same day, it is hereby

ORDERED that plaintiff's motion for summary judgment is GRANTED; it is

FURTHER ORDERED that defendants' motion for summary judgment is DENIED; and it is

FURTHER ORDERED that judgment is entered for plaintiff.

SO ORDERED.

---

**6.** The Court notes that even if the release of the individuals' names, addresses and subsidy amounts constituted a clearly unwarranted invasion of privacy under Exemption 6, The Post still would be entitled to the names, addresses and subsidy amounts of all the business entity recipients, since corporations, businesses and partnerships have no privacy interest whatsoever under Exemption 6. *See* Def.'s Mot. at 10; *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673, 685 n. 44 (D.C.Cir.1976). There are at least 17,897 identifiable business recipients. *See* Supp. Weber Decl. ¶ 5; Pl.'s Mot. at 38.