**IOWA CITIZENS FOR COMMUNITY IMPROVEMENT, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

No. CIV. 4–02–CV–10114.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 13, 2002.

James E Brick, Brick Gentry Bowers Swartz Stoltze Schuling & Levis PC, Des Moines, for IA Citizens for Community Improvement, plaintiff.

William C Purdy, United States Attorney, Des Moines, Jonathan B New, U S Department of Justice, Civil Division, Washington, DC, for United States Department of Agriculture, defendant.

## ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

LONGSTAFF, Chief Judge.

THE COURT has before it cross motions for summary judgment concerning plaintiff Iowa Citizens for Community Improvement's Complaint for Declaratory and Injunctive Relief. The matter is fully submitted and no hearing is necessary at this time.

## I. *BACKGROUND*

Plaintiff Iowa Citizens for Community Improvement ("ICCI") is a non-profit, Iowa-based membership organization. In July 2001, ICCI submitted a request to the Iowa State Farm Service Agency ("FSA"), a sub-agency of the United States Department of Agriculture ("USDA"), seeking disclosure of documents, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), concerning Tom Dorr's and/or Pine Grove Farms' receipt of federal farm subsidies. Tom Dorr has been nominated by President Bush to serve as Undersecretary of Agriculture for Rural Development.[1] Defendant USDA is the federal agency which administers farm subsidy programs and maintains the records at issue in this litigation.

Most notably, ICCI has sought disclosure of an audiotape on which it alleges Tom Dorr has admitted that he received federal farm subsidies for which he knew he, or his corporation, Pine Grove Farms, were not eligible. ICCI claimed that the disclosure of such an audiotape was warranted under the FOIA. ICCI's FOIA request to the FSA/USDA for disclosure of the audiotape was denied by the agency citing FOIA exemption 6—*i.e.*, that disclosure would amount to a clearly unwarranted invasion of personal privacy. That finding was sustained by the agency in ICCI's administrative appeal. ICCI now seeks a judicial determination of the USDA's obligation to disclose the requested audiotape and related documents pursuant to the FOIA. Additionally, ICCI claims that the audiotape and related documents will shed

---

1. The Court notes that on August 6, 2002, President Bush exercised his emergency appointment power to appoint Mr. Dorr to the post of Undersecretary of Agriculture for Rural Development while Congress is in recess. This fact, however, does not affect this Court's analysis of the issues in this case.

light on the activities of the USDA in diligently pursuing its obligations to properly administer federal farm subsidy programs.

## II. *STATEMENT OF FACTS*

1. On July 17, 2001, ICCI submitted a request under the FOIA to the Iowa State Farm Service Agency ("FSA"), Plaintiff's Revised Statement of Undisputed Material Facts (hereinafter "Pl. F."), ¶ 2; and Defendant's Response to Plaintiff's Revised Statement of Undisputed Facts (hereinafter "Df. R.F."), ¶ 2, seeking access to records concerning Tom Dorr, President Bush's nominee for Undersecretary of the Department of Agriculture for Rural Development. Pl. F., ¶ 1; Df. R.F., ¶ 1.

2. ICCI's FOIA request specifically sought, "An audio tape ... dating between 1993 to the present of Mr. Dorr admitting he received funds that he was not eligible for ....", "[a]ny documents ... dating from 1992 to the present related to the application and/or appeals to/from Tom Dorr or Pine Grove Farms requesting funds from state and local FSA/ASCS farm programs ....", and "[a]ny specific documents dating from 1993 to the present pertaining to payment limitations to Mr. Dorr or his corporation." Ex. A to Declaration of John W. Welch.

3. On August 29, 2001, defendant USDA, through Derryl McLaren in its Des Moines, Iowa FSA office, responded by facsimile to ICCI's FOIA request stating, "We are compiling for you a listing of the payments made to Tom Dorr or the corpo-

ration, Pine Grove Farms[,] as requested. Per your request, additional information is being researched by FSA in Washington, D.C. and the Office of General Counsel." Ex. C to Welch Declaration. Defendant made no mention, in its August 29, 2001 letter, of an audiotape. Following receipt of Mr. McLaren's letter, ICCI submitted a response the same day to clarify its FOIA request as specifically seeking an audiotape. Host Declaration, ¶ 3; Ex. C to Host Declaration.

4. On September 7, 2001, defendant responded to ICCI's FOIA request(s) by stating, "Payment amounts will be provided under separate cover by FSA's Kansas City office. Other requested records related to applications, appeals, payment limitation are exempt pursuant to exemption 6 of FOIA, Title 5, U.S.Code 552(b)(6) due to an unwarranted invasion of personal privacy." Ex. D to Welch Declaration. The records relating to payment amounts were mailed to ICCI on September 14, 2001. Ex. F to Welch Declaration. Those records included "a print-out listing payments made to Mr. Dorr or Pine Grove Farms during the years 1993 through 2000 and payments made back to FSA by Mr. Dorr or Pine Grove Farms during that same period." Welch Declaration, ¶ 10; Ex. F to Welch Declaration.

5. On September 14, 2001, ICCI appealed the defendant's denial of its FOIA request. Welch Declaration, ¶ 12; Ex. H to Welch Declaration.[2] That appeal was denied on December 17, 2001, on the basis of FOIA exemption 6. Welch Declaration,

---

**2.** Both parties describe various correspondence between ICCI and defendant's agents concerning the scope of both the original FOIA request and the appeal of its denial. The Court does not find the exchange of letters for clarification and/or seeking a prompt response to be material. As the Court understands this case, the only two records which are sought by plaintiff in this proceeding are an audiotape and a letter from Tom Dorr to

the Cherokee County Executive Director dated March 7, 1996. Similarly, although defendant properly described the nature and extent of the search it conducted to identify records sought by ICCI's FOIA request, the Court notes that no claim has been advanced that defendant's search was inadequate. Thus, the Court finds that the facts concerning the search for documents responsive to plaintiff's FOIA request are also not material to the

¶ 17; Ex. M to Welch Declaration. The December 17, 2001 denial of ICCI's appeal was a final decision by the agency concerning ICCI's FOIA request. Ex. M to Welch Declaration.

6. On February 28, 2002, ICCI filed its Complaint for Declaratory and Injunctive Relief alleging that the audio tape in possession of defendant was withheld in violation of the FOIA.

7. Subsequent to the initiation of this proceeding, defendant identified additional documents responsive to ICCI's FOIA request. Welch Declaration, ¶ 18. Defendant disclosed fourteen (14) pages of additional documents[3] to ICCI on June 14, 2002. *Id.* Defendant withheld a one page document from this supplemental disclosure. Welch Declaration, ¶ 19. The withheld document is "a letter dated March 7, 1996 from Mr. Dorr to the Cherokee County Executive Director, describing generally the arrangements between the Melvin G. Dorr Family Trust and Dorr's Pine Grove Farm Co. and mentioning other Dorr family members." *Id.* This letter was withheld from disclosure by the agency on the basis of FOIA exemption 6. *Id.*

8. The withheld audiotape records a purported telephone conversation between Tom Dorr and one of his brothers in which they discuss various business arrangements between Mr. Dorr and certain family trusts. Defendant's Statement of Undisputed Material Facts, ¶ 9 ("Df.F.").

9. A purported transcript of the recorded telephone conversation between Tom Dorr and his brother has been published by the *Des Moines Register*; however, the USDA asserts that the audiotape

in its possession is not the same as the transcript of the conversation published in the *Register*.[4]

### III. APPLICABLE LAW AND DISCUSSION

Summary judgment may be granted in favor of either party in a FOIA case where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Goldberg v. U.S. Dept. of State*, 818 F.2d 71, 77 (D.C.Cir.1987). Only factual disputes that might affect the outcome will preclude summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a FOIA case, the government bears the burden to prove that disclosure is not required because one of the FOIA's exemptions applies. 5 U.S.C. § 552(a)(4)(B).

The forerunner of the Freedom of Information Act, contained in Section 3 of the Administrative Procedures Act, permitted many public records to be held in secret and "gave agencies broad discretion concerning the publication of governmental records. In 1966 Congress amended that section to implement 'a general philosophy of full agency disclosure.'" *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 754, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (citing S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)) (internal citation and footnotes omitted). "The Act was designed to create a broad right of access to 'official information.'" *Id.* at 772, 109 S.Ct. 1468 (citing *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)). In addition to mandating that

---

summary judgment motions currently pending.

3. The substance of such documents is not stated in the record.

4. Although the parties place great emphasis on whether the *Register's* publication amounts

to a prior disclosure, the Court does not find this fact to be so material as to affect the outcome in this case. As such, the dispute over this fact will not preclude summary judgment.

administrative agencies publish their rules of procedure in the Federal Register, the FOIA also requires that such agencies "make available for public inspection and copying their opinions, statements of policy, interpretations, and staff manuals and instructions" *Id.* (citing 5 U.S.C. §§ 552(a)(1)(C) & (2)). Congress further required that agencies generally disclose their records to the public upon request.[5]

In curtailing administrative agencies' discretion to limit public access to government records, Congress enumerated nine categories of documents to be exempted from mandatory disclosure. *United States Department of Justice v. Tax Analysts,* 492 U.S. 136, 150–51, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (citing *Department of Justice v. Julian,* 486 U.S. 1, 8, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988)). Congress gave the district courts jurisdiction to enjoin an agency from withholding agency records and "to order the production of any agency records improperly withheld ...." 5 U.S.C. § 552(a)(4)(B). A document withheld from public disclosure which is not covered by one of the nine categories of exempt documents enumerated by Congress is improperly withheld. *Tax Analysts,* 492 U.S. at 150, 109 S.Ct. 2841 (citing *Julian,* 486 U.S. at 8, 108 S.Ct. 1606). In an action seeking to compel disclosure under the FOIA, Congress required that "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exceptions set forth in subsection (b) of [Section 552], and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). In a court's de novo review of agency action, the grant of access under FOIA is to be liberally administered, while the nine exceptions to disclosure are to be narrowly construed. *Tax Analysts,* 492 U.S. at 151, 109 S.Ct. 2841 (citing *FBI v. Abramson,* 456 U.S. 615, 642, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (O'Connor, J. dissenting) ("Congress sought to insulate its product from judicial tampering and to preserve the emphasis on disclosure by admonishing that the availability of records to the public is not limited, except as *specifically* stated.") (internal quotations omitted) (emphasis in original)).

FOIA exemption 6—the exemption relied upon by the USDA in withholding the requested records here—was established by Congress as a general exemption to disclosure in order to protect individual privacy. *United States Dept. of State v. Washington Post Co.,* 456 U.S. 595, 599, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) ("Congress' primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."). Exemption 6 provides that the portion of FOIA requiring disclosure "does not apply to matters that are—personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).[6] Thus, FOIA's exemption 6 obligates a court to balance the right of

**5.** The FOIA "requires every agency 'upon any request for records which ... reasonably describes such records' to make such records 'promptly available to any person.' If an agency improperly withholds any documents, the district court has jurisdiction to order their production. Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbi-trary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *Id.* at 754–55, 109 S.Ct. 1468 (citing 5 U.S.C. §§ 552(a)(3) & (4)(B)) (footnotes omitted).

**6.** The phrase "the disclosure of which would constitute a clearly unwarranted invasion of

the public to information held by its government against the right of individuals identified in such records to personal privacy. *Department of the Air Force v. Rose,* 425 U.S. at 372, 96 S.Ct. 1592 (1976) ("Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'"); *see also U.S. Dept. of State v. Washington Post,* 456 U.S. at 602, 102 S.Ct. 1957; *United States Department of Defense v. Federal Labor Relations Authority,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994).

### A. Public Interest in Disclosure

■ According to the Supreme Court, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government.*'" *U.S. Dept. of Defense v. FLRA,* 510 U.S. at 495, 114 S.Ct. 1006 (citing *Reporters Committee,* 489 U.S. at 775, 109 S.Ct. 1468) (emphasis in original). Thus, in the present case, the Court must decide whether the disclosure sought by ICCI's FOIA request will significantly contribute to public understanding of the operations or activities of the USDA.

ICCI asserts, "The records at issue here go [to] the heart of Mr. Dorr's fitness for office and the USDA's diligence in pursuing those who improperly take government money." Plaintiff's Reply Brief, p. 2. Clearly, ICCI presents two distinct issues: 1) Mr. Dorr's fitness for office; and 2) the USDA's proper administration of the farm subsidy program.

Mr. Dorr's fitness for public office may be of great popular concern to the public; however, that concern does not translate into a real public interest that is cognizable in the action to enforce the FOIA before this Court. *Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 866 (D.C.Cir. 1981) (holding "general public curiosity" is not a valid public interest justifying disclosure under the FOIA). Documents which may or may not shed light on Mr. Dorr's fitness for a particular office do not, based on that alone, contribute significantly to public understanding of the operations or activities of the government. Rather, such documents contribute to an understanding of Mr. Dorr's private activities prior to being nominated to serve as Undersecretary of Agriculture. Thus, ICCI's justification for disclosure, based upon its allegation that such documents reveal Mr. Dorr's "fitness for office," places disclosure of those documents outside of the purpose of the FOIA as interpreted by the Supreme Court.[7] Indeed, the Court noted,

---

personal privacy" is applicable to personnel and medical files as well as to "similar files." *See Department of the Air Force v. Rose,* 425 U.S. 352, 371–72, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Additionally, the phrase "similar files" included by Congress within exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dept. of State v. Washington Post,* 456 U.S. at 602, 102 S.Ct. 1957 (citing H.R.Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966), U.S.Code Cong. & Admin. News 1966, p. 2428).

7. Additionally, this Court believes, but need not decide, that the "fitness for office" justification for disclosure posited by ICCI may raise a non-justiciable political question over which this Court may not exercise Article III jurisdiction. *See Nixon v. United States,* 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993); *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Specifically, it is the duty of the Senate, not this Court, to decide what information is and is not relevant to a cabinet-level nominee's "fitness for office" when the Senate conducts confirmation hearings as required by the Constitution. If

"[FOIA's] basic policy of full agency disclosure unless information is exempted under clearly delineated statutory language, ... focuses on the citizens' right to be informed about what their government is up to. Official information that sheds light on an agency's performance of its statutory duty falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."

*U.S. Dept. of Defense v. FLRA,* 510 U.S. at 495–96, 114 S.Ct. 1006 (quoting *Reporters Committee,* 489 U.S. at 773, 109 S.Ct. 1468) (other internal quotation marks and citations omitted).

■ On the other hand, that such documents may shed light on the activities of the USDA and its proper administration of the farm subsidy program is a proper public interest to be weighed in the balancing required when considering a request for disclosure of documents under the FOIA. ICCI asserts, and this Court agrees, that whether the USDA is diligently pursuing repayment of improperly received farm subsidies is a government activity about which the public is entitled to disclosure of documents under the FOIA. Such disclosure would shed light on agency action and significantly contribute to the public's understanding of the activities and operations of their government. That ICCI has only requested information regarding improper receipt of farm subsidies by Mr. Dorr and his farm, Pine Grove Farms Co., does not eliminate the public interest in disclosure, but merely limits the extent to which disclosure of the requested documents weighs in the balance required under the FOIA exemption 6 analysis.[8]

### B. *Personal Privacy Interests*

■ As noted above, Congress intended FOIA exemption 6 to be a broad exception to the disclosure requirements of the FOIA where such disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In order for this Court to determine whether disclosure would cross the threshold of a clearly unwarranted invasion, it is first necessary to set forth the privacy interests that are at stake. Here, it is obvious that Tom Dorr's privacy would be impacted by such a disclosure. Also, the privacy of the other participant[9] in the telephone conversation which was taped would also have, arguably at least, a privacy interest. Finally, the privacy of individual third parties, if any, who are mentioned by Tom Dorr or the other participant during the taped telephone conversation or in the March 7, 1996 letter may be impacted by the disclosure of the materials sought by ICCI in this case.[10]

---

the "fitness for office" justification were ICCI's only justification supporting a public interest in disclosure, its claim would fail without even reaching this question. As this case is decided, however, this issue need not be reached because ICCI has presented an alternative justification supporting a public interest in disclosure which is recognized under the FOIA.

8. Had ICCI requested documents from the USDA concerning all improperly received farm subsidies by any recipients, the public interest in disclosure would seemingly be significantly greater. However, that is not the case before this Court.

9. The other participant in the taped conversation is alleged to be one of Tom Dorr's brothers.

10. To clarify, the Court's use of "individual third parties" is limited to living, natural persons. *See Cohen v. E.P.A.,* 575 F.Supp. 425, 429–30 (D.D.C.1983). Defendant asserts that the Dorr Family Trust is identified in the materials sought by ICCI. It is the government agency which bears the burden to prove that disclosure is exempt under the FOIA. *Tax Analysts,* 492 U.S. at 142, n. 3, 109 S.Ct. 2841. It is not at all clear to this Court that a trust, any more than a corporation, has a

Because the government bears the burden in a FOIA exemption 6 case to prove that disclosure would be a "clearly unwarranted invasion of personal privacy," the balance tips in favor of disclosure. *Washington Post v. H.H.S.*, 690 F.2d 252, 261 (D.C.Cir.1982); *see also Ditlow v. Shultz*, 517 F.2d 166, 169 (D.C.Cir.1975); *Getman v. NLRB*, 450 F.2d 670, 674 (D.C.Cir.1971). By contrast, in an exemption 7(C) case,[11] the balance does not tip in favor of disclosure as Congress specifically amended the FOIA to lessen the burden on the government in such cases. Under exemption 7(C), the government need only prove that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Reporters Committee*, 489 U.S. at 771, 109 S.Ct. 1468.[12] The personal privacy interests and the public interest in disclosure under exemption 7(C) are the same as those at issue in an exemption 6 case. However, it is clear that 7(C) exemption cases are not always persuasive with regard to the outcome of the balancing required under FOIA exemption 6, due to the higher standard the government must meet to sustain an agency's decision to withhold documents from disclosure under exemption 6. Indeed, the Court explained in *Reporters Committee:*

> Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects. First, whereas Exemption 6 requires that the invasion of privacy be "clearly unwarranted," the adverb "clearly" is omitted from Exemption 7(C).... Second, whereas Exemption 6 refers to disclosures that "would constitute" an invasion of privacy, Exemption 7(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion.... Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records complied for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files.

489 U.S. at 756, 109 S.Ct. 1468 (footnotes omitted).

*Re: United States Dept. of Justice*, 999 F.2d 1302, 1307 (8th Cir.1993) (citing *Reporters Committee*, 489 U.S. at 749, 109 S.Ct. 1468).

---

privacy interest worthy of protection under the FOIA. *See Ivanhoe Citrus Association v. Handley*, 612 F.Supp. 1560, 1567 (D.D.C. 1985) ("neither corporations nor business associations possess protectable privacy interests"); *Washington Post Co. v. USDA*, 943 F.Supp. 31, 36 (D.D.C.1996) (finding release of farmers' address information was not a protectable privacy interest as it was business information). In the absence of a persuasive showing by the USDA that the Dorr Family Trust is entitled to protection of an identifiable privacy interest, this Court has not given any weight to the trust's privacy interests in the balancing required in this FOIA exemption 6 case.

11. Exemption 7(C) applies to criminal investigatory records, and provides that "documents whose production 'could reasonably be expected to constitute an unwarranted invasion of personal privacy' " should not be produced under the FOIA, and FBI rap sheets have categorically been found under exemption 7(C) to constitute such a document. *See In*

12. In *Reporters Committee*, the Court was concerned with an individual's privacy interests under FOIA exemption 7(C) in disclosure of his "rap sheet" maintained by federal law enforcement agencies. The Court detailed the long history of rap sheets and concluded as a categorical matter that disclosure of a person's rap sheet could reasonably be expected to constitute an unwarranted invasion of personal privacy. *Id.* at 780, 109 S.Ct. 1468. The Court's finding, however, was based in large part on the confidential nature of rap sheets, citing to numerous statutory provisions requiring agencies to hold them confidential. *Id.* at 765, 109 S.Ct. 1468. Here, there has been no authority cited to this Court to support a conclusion that the audiotape and letter at issue in this matter enjoy the same type of confidentiality as did the rap sheets in *Reporters Committee*.

### 1. *Tom Dorr's Privacy Interests Which Would Be Invaded by Disclosure of the Documents Sought by ICCI*

Tom Dorr's privacy interest is not eliminated by the fact that he has been nominated by President Bush to serve as Undersecretary of Agriculture for Rural Development; however, his public-figure status lessens that interest. *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 894, n. 9 (D.C.Cir.1995) (finding H. Ross Perot's status as a candidate for president did not eliminate entirely, but did lessen, his expectation of privacy under the FOIA); *Common Cause v. National Archives and Records Service*, 628 F.2d 179, 184 (D.C.Cir.1980) (finding that candidates for federal elected office had a diminished expectation of privacy where documents concerning improper corporate campaign contributions produced by the Watergate Special Prosecution Force were sought under the FOIA); *see also New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Nevertheless, Mr. Dorr, like any individual, maintains a privacy interest which is invaded to some degree when the government releases documents which identify him personally. This Court further finds that the weight to be given to that privacy interest is to be determined by the type of information which is sought by the disclosure request; the more personal the information, the greater the privacy interest. Accordingly, the greater the privacy interest which would be invaded, the greater the extent to which disclosure must serve the core purpose of the FOIA in order for the result of the FOIA exemption 6 balancing to weigh on the side of disclosure.[13]

Here, the information sought is an audiotape of a telephone conversation which has been in the custody of the USDA. It is alleged that Mr. Dorr admits, or at the very least alludes, to the fact that he has improperly received federal farm subsidies in the taped telephone conversation.[14] Thus, the question is whether the receipt of farm subsidies is a personal matter.

In *Washington Post Co. v. United States Department of Agriculture*, 943 F.Supp. 31, 32 (D.D.C.1996), the Post sought a listing of all subsidy recipients growing cotton as research for an article "about allegations of fraud and conflicts of interest in the administration of the cotton price support program." There, the district court reasoned that the information sought "reflects the professional relationship of the recipients to the government as cotton farmers, and, as such, its release must be measured in the light of the effect on the recipients as business people." *Id.* at 36. Moreover, because "[e]xemption 6

---

13. The burden, however, is on the agency to sustain its decision to withhold the documents. *Reporters Committee*, 489 U.S. at 754–55, 109 S.Ct. 1468.

14. Defendant USDA cites *New York Times Co. v. NASA*, 782 F.Supp. 628 (D.D.C.1991) and *Katz v. National Archives and Records Admin.*, 862 F.Supp. 476 (D.D.C.1994) for the proposition that the records at issue here are somehow highly personal merely because they involve a taped conversation in which family members of the participants are named. However, the Court does not find either of these cases to be comparable to the issues at hand. *NASA* involved an audio recording of the last minutes of the Space Shuttle Challenger flight which ended in disaster. Clearly, such a highly emotionally charged event would invade the personal privacy of the astronauts and their families as the tape documented the last words of those individuals facing certain death. Likewise, *Katz* involved autopsy photographs taken of President Kennedy following his assassination. There, the court found that the Kennedy family had a very weighty privacy interest in not having the photographs made public because of the emotional trauma that would be caused by their release. No such personal emotional trauma has been shown by defendant here.

is designed to protect against unwarranted invasions of *personal* privacy and not typically to protect businesspeople ...″ in their business capacities, the district court found that disclosure of the information sought by the Post was not a clearly unwarranted invasion of personal privacy. *Id.* at 35–37 (emphasis in original); *see also Washington Post v. U.S. Dept. of Justice,* 863 F.2d 96, 100 (D.C.Cir.1988) (citing *Sims v. CIA,* 642 F.2d 562, 574 (D.C.Cir.1980)). Here, it is undisputed that the audiotape and letter at issue concern business arrangements between Mr. Dorr, his corporate farm company, and various trusts. Welch Declaration, ¶ 19; Df.F. ¶ 9.[15]

As noted above, the parties have argued in great detail as to whether the *Des Moines Register's* publication of a transcript purporting to be a telephone conversation between Tom Dorr and one of his brothers amounts to a prior disclosure of the audiotape in the USDA's possession. The Court recognizes that prior disclosure by the agency affects the agency's obligation to disclose the audiotape, *Tax Analysts,* 492 U.S. at 149–55, 109 S.Ct. 2841, but that dissemination by private individuals or news organizations does not require public disclosure by the agency, as the person whose privacy is at stake retains a privacy interest in not having the government confirm rumors or information by disclosure of documents in the government's possession. *Reporters Committee,*

489 U.S. at 767, 109 S.Ct. 1468 (citing *Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). Nevertheless, common sense dictates that prior disclosure— either by the government, the news media, or private individuals—does lessen an individual's expectation of privacy concerning information. Public availability of documents is merely one factor. More importantly here, a person's privacy interest is lessened, if not entirely eliminated, when the person who is identified by or is the subject of the information maintained by the agency has commented publicly about such information. *Nation Magazine,* 71 F.3d at 896, n. 10. Here, Mr. Dorr has, himself, discussed the contents of the audiotape during public hearings before the Senate concerning his confirmation to the post of Undersecretary of Agriculture. *See* Pl.F., ¶ 9; *http://agriculture.senate.gov/Hearings_2002/hearings_2002.html.* Thus, his expectation of privacy with regard to the audiotape has been substantially diminished, if not eliminated entirely, by his own prior public disclosure.

Additionally, a number of courts have held that official wrongdoing deprives an individual of the full privacy protection which might otherwise be afforded under FOIA exemptions protecting personal privacy. *See Lissner v. United States Customs Service,* 241 F.3d 1220 (9th Cir.2001) (holding disclosure under the FOIA re-

---

**15.** In explaining the breadth of the ″similar files″ language of FOIA exemption 6, Justice Rehnquist found that the House and Senate reports ″suggest that Congress' primary purpose in enacting Exemption 6 was to protect individuals from injury and embarrassment that can result from the unnecessary disclosure of *personal information.*″ *United States Department of State v. Washington Post Co.,* 456 U.S. 595, 599, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (emphasis added). Thus, it is not simply that the information cause embarrassment or stigma, but that the information be

personal information. *See also Department of Air Force v. Rose,* 425 U.S. 352, 375, n. 14, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (″the primary concern of Congress in drafting Exemption 6 was to provide for confidentiality of personal matters″); *U.S. Dept. of Defense v. FLRA,* 510 U.S. at 500, 114 S.Ct. 1006 (″The privacy interest protected by Exemption 6 'encompas[es] the individual's control of information concerning his or her person.' ″ (citing *Reporters Committee,* 489 U.S. at 763, 109 S.Ct. 1468)).

quired and exemption 7(C) not met where circumstances suggested that customs officials improperly gave police officers preferential treatment because of their status); *Common Cause v. National Archives and Records Service,* 628 F.2d 179 (D.C.Cir. 1980) (holding disclosure under the FOIA required and exemption 7(C) not met where FOIA request sought disclosure of names of candidates and corporate contributors related to Watergate investigation of improper corporate campaign contributions); *Columbia Packing Co. v. United States Department of Agriculture,* 563 F.2d 495 (1st Cir.1977) (holding disclosure of personnel records of federal meat inspectors who were convicted of taking bribes was not a clearly unwarranted invasion of personal privacy under FOIA and therefore disclosure was required); *Bennett v. Drug Enforcement Administration,* 55 F.Supp.2d 36 (D.D.C.1999) (holding disclosure of records of government payments to and the criminal history of a government informant was not an unwarranted invasion of personal privacy under the FOIA). The Court is aware that Mr. Dorr was not a USDA official at the time he applied for or received the subsidies; as such, his alleged improper receipt of federal farm subsidies does not, by itself, amount to official wrongdoing. This Court's concern is the alleged conduct of the USDA in failing to diligently pursue those who improperly receive federal farm subsidies. It is not entirely clear from the record before the Court, but it appears that the investigation and subsequent repayment of the allegedly improperly received subsidies all took place after Mr. Dorr's nomination. Thus, the concern of official wrongdoing is heightened here, where it appears that an agency may have, or could have, failed to properly administer a program because of the political influence or status of the parties involved. *See Lissner,* 241 F.3d at 1223; *cf. Hill v. Department of Agriculture,* 77 F.Supp.2d 6 (D.D.C.1999).[16]

### 2. *Privacy Interests of Others Which May Be Invaded by Disclosure of the Documents Sought by ICCI*

▮ The USDA asserts that disclosure of the documents sought by ICCI would also constitute an unwarranted invasion of the privacy of individuals other than Tom Dorr. Such individuals, the USDA claims, are identified on the audiotape and in the letter withheld, and include Mr. Dorr's family members as well as the Dorr Family Trust. The audiotaped telephone conversation is between Tom Dorr and one of

**16.** The D.C. Circuit Court has held, in the context of FOIA exemption 7(C), that disclosure of the names and addresses of private individuals are exempt from disclosure unless "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *SafeCard Services, Inc. v. Securities and Exchange Commission,* 926 F.2d 1197, 1206 (D.C.Cir.1991). For several reasons, however, this Court respectfully disagrees with the D.C. Circuit's analysis of FOIA on this point. First, this case is an exemption 6, rather than exemption 7(C) case. As noted above, FOIA exemption 6 places a heavier burden on the government to demonstrate that the disclosure of the documents sought would constitute a clearly unwarranted invasion of personal privacy. More importantly, the burden is on the government not the party seeking disclosure under the FOIA. Because it is the government which bears the burden to sustain the agency's action, this Court is more persuaded by the Ninth Circuit's reasoning in *Lissner v. U.S. Customs Service,* 241 F.3d 1220 (2001), than by the D.C. Circuit's *SafeCard* analysis. *Lissner,* 241 F.3d at 1223 ("While the public interest in ensuring the integrity and reliability of government investigation procedures is greater where there is some evidence of wrongdoing on the part of the government official, nothing in the statutory command of the FOIA conditions agency compliance on the requesting party showing that he has knowledge of misfeasance by the agency.") (internal citations omitted).

his brothers. As a participant in the conversation, the brother has a privacy interest in the contents of the taped telephone conversation. Other Dorr family members who are identified on the audiotape or in the letter withheld also have a privacy interest. Finally, the Dorr Family Trust, the USDA claims, has a privacy interest too.[17]

As with Mr. Dorr's privacy interests, his family members' privacy interests are diminished but not eliminated by the fact that the audiotape has been previously, at least, partially publicly available. However, none of the other Dorrs, to this Court's knowledge, are public figures in the way that Tom Dorr is. Their privacy is not, by virtue of their relationship with Tom Dorr, lessened by his status as a public figure. Nevertheless, as with the privacy interest of Tom Dorr which is recognized under the FOIA exemption 6, his family members' privacy interests only extend to matters of *personal* privacy. The Dorr family's participation in the federal farm subsidy program is not a personal matter but, rather, a professional or business arrangement with the federal government. *Washington Post v. U.S. Dept. of Justice*, 863 F.2d at 100; *Washington Post v. USDA*, 943 F.Supp. at 35–37. Thus, the privacy interests recognized under the FOIA are not particularly strong in this case. To the extent that the Dorr family's receipt of federal farm subsidies is discussed and family members are identified on the audiotape or in the letter with regard to the receipt of such subsidies, that information is not *personal*. On the other hand any information relating to intra-familial relationships which is contained in the materials is entitled to privacy protection.

### C. The Balancing of the Public Interest Against the Privacy Interests

Here, the USDA has already required Mr. Dorr and/or Pine Grove Farms Co. to return approximately $34,000 in farm subsidies improperly received. In light of the apparent fact that farm subsidies were improperly received, that the USDA has required repayment of some of the subsidies, but that the USDA has not undertaken further administrative action in this particular case, the public, including ICCI, has a right, under the FOIA, to disclosure of documents which may reveal whether such actions or failures to act by the USDA were taken as a result of Mr. Dorr's status as a nominee who, if confirmed, would be the third highest administration official in the Department of Agriculture.

The key issue in this matter is whether disclosure would shed light on the activities of the USDA in administering the farm subsidy program. If the material which identifies members of the Dorr family is relevant to an understanding of the USDA's activities, the public interest in disclosure outweighs the privacy interest of the Dorr family members. If, however, the material which identifies members of the Dorr family relates only to intra-familial relationships and is not relevant to an understanding of the USDA's activities, the Court finds that release of such material would constitute a clearly unwarranted invasion of personal privacy and may be withheld or redacted on the basis of FOIA exemption 6.

### IV. *IN CAMERA INSPECTION*

■ The Court recognizes its primary role in this FOIA action is to review the record submitted by the parties, in partic-

---

**17.** For the reasons already set forth, the Court rejects defendant's claimed privacy interest of the Dorr Family Trust. *See supra.* fn. 10.

ular the affidavits and evidence submitted by defendant in support of its decision to deny plaintiff's FOIA request. *See, e.g., Barney v. Internal Revenue Service,* 618 F.2d 1268, 1272 (8th Cir.1980) (citation omitted). This Court should not be a "super-administrator" and just conduct an *in camera* review in every FOIA case. *Id.* "The *in camera* review provision [of FOIA] is discretionary by its terms, and is designed to be invoked when the issue before the [d]istrict [c]ourt could not be otherwise resolved." *National Labor Relations Board v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

However, where the government has been "given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure," *in camera* inspection can be found "necessary and appropriate" where the exemption does not clearly cover all records at issue. *See Quinon v. F.B.I.,* 86 F.3d 1222, 1227 (D.C.Cir.1996) (citing S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6287). Courts consistently recognize that *in camera* review is appropriate where "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims." *Quinon,* 86 F.3d at 1228 (citations omitted). Additionally, "when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents, *in camera* review may be more appropriate." *Id.* (citations omitted).

In light of FOIA exemption 6, the record submitted by the parties, and the Court's analysis set forth above, the Court finds *in camera* inspection is necessary. The Court will review the audiotape and the March 7, 1996 letter from Tom Dorr to the Cherokee County Executive Director. Any portion of either item which relates

only to the Dorrs' intra-familial relationships will be covered by exemption 6 and ordered to be redacted. Any portion of either document that will shed light on the activities of the USDA in administering the federal farm subsidy program will be ordered to be provided to the plaintiff. Defendant USDA shall provide these two items to the Court for *in camera* inspection no later than August 30, 2002.

In addition to the complete, un-redacted audiotape and letter, defendant may, if it chooses, submit to the Court a separate transcript of the audiotape and the letter with notations indicating the portions, if any, of such records the USDA believes should be redacted pursuant to this order. The Court may, in its discretion, adopt all, some or none of the defendant's suggestions for redactions as the Court conducts its own independent *in camera* review of the documents.

## V. CONCLUSION

As set forth above, plaintiff's motion for summary judgment is GRANTED IN PART, with the issue of appropriate redactions to be reserved pending *in camera* review of the documents. Defendant's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.