**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY;
DEFENDERS OF WILDLIFE; SIERRA
CLUB,
             *Plaintiffs-Appellees,*

                    v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, Wildlife Services,
Animal and Plant Health
Inspection Service,
             *Defendant-Appellant.*

No. 09-17233

D.C. No.
4:07-cv-00629-JMR

OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, Chief District Judge, Presiding

Argued and Submitted
November 1, 2010—San Francisco, California

Filed December 2, 2010

Before: Arthur L. Alarcón and Pamela Ann Rymer,
Circuit Judges, and David G. Trager,
Senior District Judge.*

Opinion by Judge Rymer

---

*The Honorable David G. Trager, Senior United States District Judge
for the Eastern District of New York, sitting by designation.

**COUNSEL**

John S. Koppel, U.S. Department of Justice, Washington, D.C., for the appellant.

Matt Kenna, Western Environmental Law Center, Durango, Colorado, for the appellees.

**OPINION**

RYMER, Circuit Judge:

The United States Department of Agriculture (USDA) appeals the district court's grant of summary judgment in favor of the Center for Biological Diversity, which required the USDA, under the Freedom of Information Act (FOIA), to disclose the GPS coordinates of wolf depredations to which it had responded. The district court held that the coordinates were not exempt from disclosure under FOIA Exemption 3 or Exemption 6. We have jurisdiction under 28 U.S.C. § 1291, and we reverse. Exemption 3 applies because Section 8791 of the Food, Conservation, and Energy Act of 2008 (FCEA) exempts from disclosure such geospatial data and applies to this case even though it took effect after the USDA withheld the coordinates.

I

The facts are largely not in dispute. The USDA operates the Wildlife Services program (WS) through the Animal and Plant Health Inspection Service (APHIS). The WS program reduces crop and livestock depredations caused by the Mexi-

can wolf, along with birds, rodents, and other predators. The WS enters into agreements with individuals, referred to as ranchers or cooperators, to access their land to remove or capture the wolves.

The Center for Biological Diversity and other conservation groups (collectively, the Center) are concerned about the reduced number of Mexican wolves remaining in the wild and believe that WS removals limit the growth of the species. As a result, the Center submitted a FOIA request to APHIS that included, in relevant part, a request for the specific GPS coordinates where wolf depredations had occurred in order to evaluate the WS program. GPS coordinates are collected by WS staff members while on rancher property investigating depredations.

APHIS provided the city and state where each depredation had occurred, but withheld the specific GPS coordinates, citing FOIA Exemption 6 for the personal privacy of the ranchers involved. APHIS also provided records describing specific instances of WS activity, wolf complaint investigations, and reports on depredations, though all with GPS data redacted.

The Center then brought suit under FOIA against the USDA, APHIS, and WS (collectively, the USDA) for withholding the GPS coordinates. The parties filed cross-motions for summary judgment.

The district court granted the Center's motion for summary judgment and denied that of the USDA. *Center for Biological Diversity v. Wildlife Services*, 649 F. Supp. 2d 974, 975 (D. Ariz. 2009). The court held inapplicable FOIA's Exemption 3 for matters exempted from disclosure by certain other statutes. *Id*. at 980. Regarding a prohibition in Section 8791 of the FCEA on disclosure by the USDA of certain geospatial information, 7 U.S.C. § 8791(b)(2)(B), the district court noted that "Wildlife Services responded to the Conservation Groups' requests for records before the FCEA's effective

date." *Id.* The court reasoned that "absent Congress' 'express command,' statutes are only to be applied prospectively." *Id.* (citing *Martin v. Hadix*, 527 U.S. 343, 345 (1999)). As a result, the district court concluded that "section 1619 of the FCEA [codified as Section 8791] cannot be applied retroactively to cover the conduct at issue in the instant case." *Id.* The district court also concluded that Exemption 6 did not apply. *Id.* at 977-79. The USDA timely appealed.

## II

In FOIA cases, we employ a two-step standard of review for summary judgment. *Lion Raisins Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1078 (9th Cir. 2004). First, the court reviews *de novo* whether an adequate factual basis exists to support the district court's decision. *Id.* Second, the court reviews the district court's conclusions of fact for clear error, while legal rulings, including its decision that a particular exemption applies, are reviewed *de novo*. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008).

## III

FOIA "was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citations omitted). There is therefore a "strong presumption in favor of disclosure." *Id.* However, FOIA contains a number of exemptions. 5 U.S.C. § 552(b). Under Exemption 3, FOIA does not apply to matters that are specifically exempted from disclosure by certain other statutes. 5 U.S.C. § 552(b)(3).

In determining the applicability of Exemption 3, "[f]irst, we determine whether the withholding statute meets the requirements of Exemption 3. Then, we determine whether the requested information falls within the scope of the withholding statute." *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007). In this case, there is also the third issue

of whether the withholding statute, Section 8791, can be applied here even though it took effect after the withholding at issue.

## A

The parties do not dispute that Section 8791 meets the requirements of Exemption 3. We therefore assume without deciding that it does. *See Zanoni v. U.S. Dep't of Agric.*, 605 F.Supp.2d 230, 236-37 (D.D.C. 2009) (reasoning that Section 8791 satisfies the requirements of Exemption 3).

## B

**[1]** The requested GPS coordinates fall within the scope of Section 8791's prohibition on disclosure. Section 8791(b)(2) prohibits disclosure of "geospatial information" maintained by the USDA about "agricultural . . . operations" for which "information [is] provided by an agricultural producer" to the USDA "concerning the agricultural operation" "in order to participate in programs of the Department." 7 U.S.C. § 8791(b)(2)(A), (B).

These elements are satisfied here. First, there is no dispute in this case that the GPS coordinates are "geospatial information." Second, the GPS data concerns "agricultural operations," a term that includes livestock production under 7 U.S.C. § 8791(b)(1), because it concerns depredations that limit the ranchers' livestock production. Third, the "agricultural producer," the rancher, provides information to the USDA "concerning the agricultural operation" when he reports his loss of livestock by wolf depredations to the USDA. Fourth, the rancher reports this information "in order to participate in programs of the Department," namely the WS program that captures or removes the wolves.

The Center argues that the legislative history of Section 8791 indicates that it was intended to apply only to propri-

etary information and only to private land. Yet when, as here, the text of a statute is clear, it is not necessary to turn to legislative history. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997). Regardless, the history does not suggest that Section 8791 was not intended to apply to GPS data like that at issue in this case. To the extent Section 8791 was a reaction against *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224 (D.C. Cir. 2008), that suggests it was intended to prohibit disclosure of GPS data like that at issue here, because *Multi Ag* required the release of a database used with GPS technology. *Multi Ag*, 515 F.3d at 1226-27, 1233. Though an earlier, deleted provision of the FCEA was concerned with the disclosure of "proprietary and or confidential business information," H.R. Rep. No. 110-627, at 867 (2008), that provision was not enacted and thus has no bearing on our analysis. As a result, the requested GPS coordinates fall within the scope of Section 8791's prohibition on disclosure.

C

**[2]** Section 8791 applies in this case despite taking effect after the USDA withheld the GPS coordinates. In *Landgraf*, the Supreme Court described a two-step analysis for determining the applicability of legislation enacted after the acts that gave rise to the suit. *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). First, courts must "determine whether Congress has expressly prescribed the statute's proper reach." *Id*. If so, that controls. *Id*. Second, absent such express language, courts must "determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. If the statute would operate retroactively in that way, it does not apply absent clear congressional intent favoring such a result. *Id*.

**[3]** As for the first step, the Court in *Landgraf* already

addressed an effective date provision very similar[1] to that in the FCEA and concluded that it did not constitute express direction from Congress in either direction. *Id.* at 257 (determining that "[t]hat language does not, by itself, resolve the question before us"). Given the similarity of the provisions, *Landgraf* indicates that the FCEA does not expressly resolve whether or not Section 8791 applies to pending cases.

**[4]** As for the second step, we have already determined that there is no impermissible retroactive effect under *Landgraf* in applying a new statute to a pending FOIA case through Exemption 3. *Southwest Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 314 F.3d 1060, 1062 (9th Cir. 2002). In *Southwest*, a conservation group brought a FOIA action to compel the Forest Service to release location data concerning an endangered bird. *Id.* at 1061. While the action was pending in the district court, Congress enacted legislation permitting such information to be withheld from the public. *Id.* In determining whether the statute applied in that case, we concluded that "[t]here is no such impermissible retroactive effect here" because "the 'action' of the Center was merely to request or sue for information; it was not to take a position in reliance upon existing law that would prejudice the Center when that law was changed." *Id.* at 1062. As a result, the new legislation applied to the pending case through Exemption 3. *Id.*

**[5]** *Southwest* requires the conclusion that there is no impermissible retroactive effect in applying Section 8791 to the Center's pending FOIA action. As in *Southwest*, the only action the Center took was to request information and file

---

[1]The *Landgraf* provision provided that "except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." *Landgraf*, 511 U.S. at 257. The effective date provision in this case similarly provides "except as otherwise provided in this Act, this Act and the amendments made by this Act shall take effect on the earlier of — (1) the date of enactment of this Act; or (2) the date of the enactment of [a duplicative bill also containing Section 8791]." Pub. L. No. 110-246, § 4(b), 122 Stat. 1651, 1664 (2008).

suit. It engaged in no other action in reliance on then-existing law. We have already explicitly rejected the theory that there is an impermissible retroactive effect just because "the Center had a right to the information when it filed its suit . . . and it loses that right by application of the new exemption." *Southwest*, 314 F.3d at 1062. The Center seeks to distinguish Southwest on the grounds that it did not concern a statute with an effective date, but this distinction is not relevant, as *Landgraf* established that a similar "effective date" provision was inconclusive. *Landgraf*, 511 U.S. at 257, 280.

**[6]** Furthermore, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf*, 511 U.S. at 273. Here, the Center seeks the prospective relief of an injunction directing the USDA to provide it with certain information. Section 8791 merely affects the propriety of this prospective relief and is therefore not impermissibly retroactive when applied in this case.

*Martin v. Hadix*, 527 U.S. 343 (1999), is entirely consistent with this conclusion. *Martin* does not indicate that absent Congress' express command, statutes are only to be applied prospectively. In *Martin*, the Supreme Court applied the two-step *Landgraf* framework. *Martin*, 527 U.S. at 353-360. In the first step, the Court concluded that the language of a particular statute did not resolve the question of retroactivity because it lacked an " 'unambiguous directive' or 'express command' that the statute is to be applied retroactively." *Id.* at 354 (citing *Landgraf*, 511 U.S. at 263, 280). That did not end the analysis, however, but merely required the Court to proceed to the second step. *Id.* at 357. There, the Court concluded that applying that statute to pending actions would inappropriately " 'attach new legal consequences' to completed conduct." *Id.* at 358 (citing *Landgraf*, 511 U.S. at 270). In this case, by contrast, there is no such impermissible retroactive effect at this second step, as established by *Southwest*. Section 8791 there-

fore applies in this case despite taking effect after the USDA withheld the GPS coordinates.

IV

**[7]**  Accordingly, we reverse the district court's order granting summary judgment in favor of the Center and denying summary judgment to the USDA. The GPS coordinates are exempt from disclosure under FOIA because Section 8791 meets the requirements of Exemption 3, applies to the GPS coordinates at issue, and can be applied in this case even though it took effect after the USDA's withholding. In light of this conclusion, we do not reach the question of whether Exemption 6 also applies.

REVERSED.