**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DOUGLAS FRED CARLSON,
　　　　　*Plaintiff-Appellant,*

　　　　　v.

US POSTAL SERVICE,
　　　　　*Defendant-Appellee.*

No. 05-16159

D.C. No.
CV-03-04113-RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Submitted December 26, 2006

Filed October 15, 2007

Before: Jerome Farris, Robert Boochever, and
Edward Leavy, Circuit Judges.

Opinion by Judge Leavy

**COUNSEL**

Douglas F. Carlson, Pro Se, San Francisco, California, plaintiff-appellant.

Leonard Schaitman and Anthony A. Yang, United States Department of Justice, Civil Division, Washington, D.C., for the defendant-appellee.

---

**OPINION**

LEAVY, Circuit Judge:

Douglas F. Carlson appeals pro se the district court's grant of summary judgment in favor of the United States Postal Service (USPS) in Carlson's action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, which sought public disclosure of the names, addresses, telephone numbers, regular business hours and final collection times for outgoing mail for every United States post office. The district court determined that the records sought were exempt from FOIA disclosure as "information of a commercial nature, . . . which under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2).

We have jurisdiction over this timely appeal under 28 U.S.C. § 1291. Because the requested records are not "information of a commercial nature," we reverse.

**FACTS AND PRIOR PROCEEDINGS**

On June 7, 2003, Carlson submitted a FOIA request to USPS requesting:

> an electronic version of records from the database that serves the Find MyPostOffice™ search option

in the Post Office Locator application under the "Locate a Post Office" link at *www.usps.com* that will show, at a minimum, the following information for every Postal Service post office, station, branch, or other postal facility in the database:

1. Facility Name (e.g., Walnut Creek Main Office)

2. Facility Address

3. Facility Telephone Number

4. Regular Business Hours (for all days of the week)

5. Last Collection at Post Office (for all days of the week)

USPS denied Carlson's request, asserting, in part, that the information was exempt from disclosure under "FOIA exemption 3 in conjunction with 39 U.S.C. § 410(c)(2)" because it was information of a commercial nature which under good business practice would not be publicly disclosed:

The information you requested concerning the Postal Service's retail sales operations constitutes "information of a commercial nature" within the meaning of section 410(c)(2). The web page to which you refer is one of the most popular pages on the Postal Service's web site, attracting approximately 750,000 hits monthly. In internet commerce, the ability to draw hits is a measure of the success of the web site. Thousands of users are drawn to Postal Service's web site by the Post Office Locator web page, and the Postal Service would prefer to retain customers at its web site.

USPS asserted that release of the requested information could cause "mirror" websites, which could (1) reduce USPS product sales, (2) redirect delivery business to other carriers, (3) cause customer confusion, and (4) increase USPS costs because the mirror website would generate more calls from confused customers to the USPS call center or local facilities. In addition, USPS asserted that its business relationship with the company, Switchboard, Inc., which maintains and operates the Post Office Locator website, would be undermined by release of the information.

Thereafter, Carlson brought an action in United States District Court for the Northern District of California seeking an order requiring USPS to provide the requested records. The parties filed cross motions for summary judgment. USPS submitted two declarations in support of its motion for summary judgment, one from the Senior Web Specialist for USPS.com, and the other from an attorney in the USPS Law Department. These declarations supported USPS's assertions in its letter denying Carlson's FOIA request. In addition, the Web Specialist's declaration explained that USPS pays nothing to Switchboard, Inc., for its web services, but permits Switchboard to redirect Post Office Locator users to other Switchboard client sites.

Carlson also submitted a declaration in support of his motion for summary judgment stating that the information he sought was already available to the public through the USPS website or call center or by visiting local post offices.

On March 31, 2005, the district court granted summary judgment in favor of USPS. First, the court held that 39 U.S.C. § 410(c)(2) is a statute within the scope of Exemption 3 of FOIA, 5 U.S.C. § 552(b)(3)(B), which makes FOIA inapplicable to matters exempted from disclosure by another statute, provided that the statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(B). The district court held that

§ 410(c)(2)'s "good business practice" limitation satisfied subsection (B)'s requirement of particularized criteria.

The district court then held that the information sought by Carlson fell under § 410(c)(2), because it was information of a commercial nature which would not be publicly disclosed under good business practice. While the district court recognized that "post office names, locations, and hours of operation are not intrinsically commercial information," it looked to USPS regulations, 39 C.F.R. § 265.6(b)(3)(vi) & (vii), which identify two categories of information subject to § 410(c)(2): (1) "[r]ecords compiled within the Postal Service which would be of potential benefit to persons or firms in economic competition with the Postal Service" and (2) "[i]nformation which, if publicly disclosed, could materially increase procurement costs." The district court held that the requested information was commercial in nature because "it may be of a potential benefit to defendant's competitors." For the same reason, the district court also held that it would not be a "good business practice" to release the information.

Carlson filed a timely notice of appeal on May 2, 2005.

## STANDARD OF REVIEW

We employ a two-step standard to review summary judgment in FOIA cases. If the factual basis of the district court's decision is in dispute, we determine whether the district court had an adequate factual basis for its decision using a clearly erroneous standard. *See Lion Raisins v. U.S. Dep't of Agric.*, 354 F. 3d 1072, 1078 (9th Cir. 2004). If, as here, an adequate factual foundation exists, we review de novo the district court's legal rulings, including its conclusion that a FOIA exemption applies. *See Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).

USPS asserts that we should apply a more deferential, administrative law standard of review when determining

whether the requested information falls within the scope of § 410(c)(2). In *Aronson v. IRS*, 973 F.2d 962, 966-67 (1st Cir. 1992), the First Circuit applied this deferential standard of review to the IRS's determination that taxpayer information fell within the scope of another Exemption 3 statute, I.R.C. § 6103. However, we have not adopted the First Circuit's approach and, when considering the interplay of FOIA and § 6103, we specifically stated:

> [I]f section 6103 is subject to FOIA, the court will proceed de novo and the agency bears the burden of establishing the exempt status of the information.

*Long v. U.S. IRS*, 742 F.2d 1173, 1178 n.12 (9th Cir. 1984) (citations omitted). We have also noted:

> A basic policy of FOIA is to ensure that Congress and not administrative agencies determines what information is confidential. Given the court's responsibility to ensure that agencies do not interpret the exemptions too broadly, deference appears inappropriate in the FOIA context.

*Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1335 (9th Cir. 1987) (citation omitted). Therefore, we do not give deference to the USPS's determination that the requested information was "information of a commercial nature" and review de novo.

## ANALYSIS

As a general rule, we employ a two-part inquiry to determine whether Exemption 3 applies to a particular FOIA request. *See Minier*, 88 F.3d at 801. First, we determine whether the withholding statute meets the requirements of Exemption 3. Then, we determine whether the requested information falls within the scope of the withholding statute. *See id.* However, neither party to this appeal contests the dis-

trict court's ruling that 39 U.S.C. § 410(c)(2) meets the requirements of Exemption 3. Therefore, we assume without deciding that 39 U.S.C. § 410(c)(2) qualifies as an Exemption 3 statute for purposes of this appeal and proceed directly to the question whether the requested records fall within the scope of § 410(c)(2).

USPS asserts that the requested information is commercial because its Post Office locator database has commercial value and attracts customers to the Post Office website for marketing and advertising. It also argues that the Postal Reorganization Act (PRA) gave the Postal Service the status of a private commercial enterprise, such that its website is commercial, and the locator database, which attracts people to the website, is commercial information. However, USPS's argument is undermined by the position and purpose of the United States Postal Service, common understanding of the definition of "commercial," and case law interpreting the phrase "information of a commercial nature."

*United States Postal Service Purpose.* As we noted in *Church of Scientology v. U.S. Postal Serv.*, 633 F.2d 1327, 1332-33 (9th Cir. 1980), the PRA sought to eliminate outmoded "legislative, budgetary, financial, and personnel policies" so that USPS could employ "modern management and business practices" to provide the American public with "efficient and economical postal service." (quoting H.R. Rep. No. 91-1104, 91st Cong., 2d Sess., at 2 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3649, 3650). Under the PRA, the Postal Service is to operate in a more "businesslike way" but with "appropriate safeguards" against abuse of its responsibility for managing the postal system and "appropriate assurances of continued congressional surveillance." H.R. Rep. No. 91-1104 at 5, *reprinted in* 1970 U.S.C.C.A.N. at 3653.

As stated in the PRA:

> The United States Postal Service shall be operated
> as a basic and fundamental service provided to the

people by the Government of the United States, authorized by the Constitution, created by Act of Congress, and supported by the people. The Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people.

39 U.S.C. § 101(a) (Postal Policy).

Thus, USPS is not a private business, but

has different goals, obligations, and powers from private corporations. Its goals are not those of private enterprise. The most important difference is that it does not seek profits, but only to break even, which is consistent with its public character. It also has broader obligations . . . . Finally, the Postal Service has many powers more characteristic of Government than of private enterprise, including its state-conferred monopoly on mail delivery, the power of eminent domain, and the power to conclude international postal agreements.

*U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 747 (2004) (citation omitted).

[1] Thus, under the PRA, USPS is a government entity, not a business, which provides a service, mail delivery, to the public. Post offices are a primary means of public access to mail service. Basic information concerning these access points, such as the location of post offices and their phone number, hours of operation and time of mail pick-up is not information that is commercial in nature.

[2] *Definition of Commercial.* Because the PRA and USPS do not define the term, "commercial,"[1] we apply the common

---

[1]USPS regulations list eight categories of "information of a commercial nature . . . which under good business practice would not be disclosed."

meaning of the term. *See Lands Council v. Martin*, 479 F.3d 636, 642 (9th Cir. 2007). We have previously surveyed the common definitions of commercial:

> Webster's defines "commercial" as "occupied with or engaged in commerce or work intended for commerce; of or relating to commerce." The American Heritage Dictionary of the English Language provides a strikingly similar definition, viewing "commercial" as meaning "1.a. of or relating to commerce, b. engaged in commerce, c. involved in work that is intended for the mass market." Black's Law Dictionary adds that "commercial" may be defined as "relates to or is connected with trade and traffic or commerce in general; is occupied with business or commerce."

---

39 C.F.R. § 265.6(b)(3)(2005). The regulations do not define commercial. The eight categories are:

(i)   Information pertaining to methods of handling valuable registered mail.

(ii)   Records of money orders, except as provided in R900 of the Domestic Mail Manual (DMM).

(iii)   Technical information concerning postage meters and prototypes submitted for Postal Service approval prior to leasing to mailers.

(iv)   Reports of market surveys conducted by or under contract in behalf of the Postal Service.

(v) Records indicating rural carrier lines of travel.

(vi)   Records compiled within the Postal Service which would be of potential benefit to persons or firms in economic competition with the Postal Service.

(vii)   Information which, if publicly disclosed, could materially increase procurement costs.

(viii)   Information which, if publicly disclosed, could compromise testing or examination materials.

*Id.*.

*The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1061 (9th Cir. 2003) (en banc) (citations omitted). Thus, "[i]nformation is commercial if it relates to commerce, trade, or profit." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987) (interpreting "commercial" as used in FOIA fee waiver provision).

**[3]** Mail service may be essential to commerce and trade, but information concerning the names, addresses, telephone numbers, and regular business hours of post offices, is not commercial information. While the Postal Service argues the requested information concerning post offices is commercial because it has value, this is too broad a definition of commercial, particularly given our prior admonition that an Exemption 3 statute's "identified class of nondisclosable matters [must be] narrow" to meet the requirements of Exemption 3. *Lessner*, 827 F.2d at 1336.

**[4]** USPS also relies on two of its regulations, 39 C.F.R. § 265.6(b)(3)(vi) & (vii), to support its argument that the information requested by Carlson is commercial. These regulations provide in relevant part:

> (b) Records not subject to mandatory public disclosure. . . .
>
>   . . . .
>
>   (3) Information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed. This class includes, but is not limited to:
>
>     . . . .
>
>     (vi) Records compiled within the Postal Service which would be of potential benefit

to persons or firms in economic competition with the Postal Service.

(vii) Information which, if publicly disclosed, could materially increase procurement costs.

39 C.F.R. § 265.6(b)(3)(vi) & (vii). USPS' interpretation of these regulations to encompass the location, phone numbers and hours of its post offices is inconsistent with the regulation and with the statute, because both require that the information be of "a commercial nature" in the first instance. *See* 39 U.S.C. § 410(c)(2); 39 C.F.R. § 265.6(b)(3). Because USPS's interpretation is inconsistent with its own regulations and based on an impermissible construction of the governing statue, it is not entitled to deference. *See Auer v. Robbins*, 519 U.S. 452, 457 & 461 (1997); *League of Wilderness Defenders v. Forsgren*, 309 F.3d 1181, 1183 (9th Cir. 2002).

**[5]** *Case Law*. The majority of cases which have upheld USPS's withholding of information under § 410(c)(2) have concerned proprietary information. *See, e.g.*, *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 589, 589 (spreadsheets detailing quantity and pricing information in contract between USPS and the successful bidder for the mailing supplies contract); *Piper & Marbury LLP v. U.S. Postal Serv.*, 2001 WL 214217, at *4-5 (D.D.C. Mar. 6, 2001) (figures and data in a contract between USPS and DHL); *Reid v. U.S. Postal Serv.*, No. 05-cv-294-DRH, 2006 WL 1876682, at *7-8 (S.D. Ill. July 5, 2006) (information in USPS mailing permits for a private marketing firm which would reveal the firm's clients, mailing agents, and charges by USPS); *Airline Pilots Ass'n Int'l v. U.S. Postal Serv.*, Civil Action No. 03-2384, 2004 WL 5050900 (D.D.C. June 24, 2004) (redacted information in delivery agreements between USPS and FedEx including pricing and rates).

**[6]** In contrast, in *Nat'l Western Life Ins. Co. v. United States*, 512 F. Supp. 454, 462 (N.D. Tex. 1980), the names

and duty stations of USPS employees in two cities did not constitute commerical information and was not within the scope of § 401(c)(2) even though "it may not be good business practice for a private company to disclose names and addresses of its employees." Here, the records requested are not proprietary, and, in fact, are already publicly available. That it may not be good business practice to disclose the information requested does not, by itself, make it commercial in nature.

**[7]** Post office names, addresses, telephone numbers, hours of operation and final collection times are not "information of a commercial nature," and, therefore, are not within the scope of § 401(c)(2). We do not decide whether the complete USPS database from which Carlson requested an electronic version of this particular information is commercial nor whether the USPS database may be exempt from disclosure. In so ruling we do not preclude further consideration by the district court nor do we preclude consideration of reasonable conditions.

**[8]** *Litigation Costs*. Carlson has requested an award of his district court litigation costs and his costs on appeal. Under 5 U.S.C. § 552(a)(4)(E) a court may award a substantially prevailing plaintiff in a FOIA action litigation costs that are reasonably incurred. Carlson's request for district court litigation costs is remanded to the district court for its consideration in the first instance. *See Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1224 (9th Cir. 2001). Carlson is awarded costs on appeal.

**REVERSED AND REMANDED.**